Coos
No. 2012-174

THE STATE OF NEW HAMPSHIRE

v.

WILLIAM PLOOF

Argued: April 11, 2013
Opinion Issued: June 28, 2013

*Michael A. Delaney*, attorney general (*Brian R. Graf*, senior assistant attorney general, on the brief, and *Stacey P. Coughlin*, attorney, orally), for the State.

*James B. Reis*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, C.J. The defendant, William Ploof, was convicted of aggravated felonious sexual assault and conspiracy to commit aggravated felonious sexual assault, following a jury trial in Superior Court (*Bornstein*, J.). *See* RSA 632-A:2 (Supp. 1983) (amended 1986, 1992, 1994, 1995, 1997, 1998, 1999, 2003, 2008, 2012) (now codified at RSA 632-A:2, I(l) (Supp. 2012)); RSA 629:3 (1974) (amended 1999). On appeal, he argues that the evidence was insufficient to establish his identity and that the trial court erred by not declaring a mistrial during the victim's testimony. We affirm.

The jury could have found the following facts. Between August 1982 and April 1983, the victim, J.Z., who was eleven or twelve years old, and his friend, R.W., who was twelve years old, sometimes associated with a group of men who provided the boys with alcohol and marijuana. One day during that time, the boys went to the apartment of one of the men, Gerard Duchesne. Also present were the defendant, Maurice Boucher, and Lyle Whitehouse. The men began talking about sex and certain sexual acts that the defendant could perform by himself and with others. At some point, R.W. went into the bathroom with Boucher for five or ten minutes. R.W. testified that, when he returned, J.Z. had "a sickening look on his face," was "just about in tears, and he wanted to leave." J.Z. testified that while R.W. was out of the room, the defendant fondled him and put J.Z.'s penis in the defendant's mouth.

At some point after this incident, the defendant threatened the boys that if they told anybody what had happened, he would kill them. Heeding the threat, they did not speak, even to each other, about what had happened.

More than twenty-seven years later, in 2009, while the Berlin Police were investigating an unrelated crime, J.Z. was interviewed as a possible witness. At that time, the police learned of J.Z.'s allegations of sexual assault that resulted in the charges in this case.

Although the defendant was present at jury selection, he later submitted a waiver of his right to be present at trial, which the court initially denied. The defendant then refused to be transported to the trial and renewed his waiver of his right to be present. The court granted his request, and the trial proceeded without him. At the close of the State's case, the defendant moved to dismiss, asserting that the evidence was insufficient to prove identity, and subsequently moved to set aside the verdict for the same reason. The trial court denied both motions. The defendant was convicted of aggravated felonious sexual assault and conspiracy to commit aggravated felonious sexual assault; this appeal followed.

The defendant first argues that the evidence was insufficient to establish his identity as the perpetrator of the charged crimes. The State counters that the identity evidence was sufficient, because three witnesses, who knew the defendant personally, identified him by name.

██ To prevail on his sufficiency of the evidence claim, the defendant must establish that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *See State v. Wilmot*, 163 N.H. 148, 154 (2012). The State has the burden of proving beyond a reasonable doubt that the person charged with a crime is indeed the perpetrator of that crime. *Cf. State v. Ward*, 118 N.H. 874, 878 (1978) (discussing proof that defendant is same person who has been convicted of offenses listed in habitual offender petition). Of course, when a defendant waives his right to appear at trial and the trial proceeds *in absentia*, witnesses cannot point to the defendant in court to identify the defendant as the perpetrator.

█ As the State maintains, three witnesses, who testified that they knew the defendant personally, identified him by name. The State contends that the identification of the defendant was, therefore, supported by sufficient evidence. We have previously held, however, that "sameness of name is insufficient evidence of identity, even when the name is unusual." *State v. Lougee*, 137 N.H. 635, 637 (1993) (quotation omitted), *impliedly overruled on other grounds as recognized by State v. Thompson*, 164 N.H. 447, 451 (2012). Consequently, more was required than merely asserting that the perpetrator of the crimes and the defendant, who was not present, shared the same name. *See Akridge v. State*, 970 So. 2d 917, 918 (Fla. Dist. Ct. App. 2007).

█ We agree with the State's assertion that when there is no contrary evidence offered by the defendant in a criminal case, "a comparatively small amount of proof in addition to identity of name constitutes sufficient evidence to submit to a jury to whose good judgment the decision is entrusted." *State v. Olson*, 244 N.W.2d 718, 721 (N.D. 1976) (quotation omitted); *accord Com. v. Doe*, 393 N.E.2d 426, 428 (Mass. App. Ct. 1979) ("Slight confirmatory evidence is needed to establish identity of persons where there is identity of names."). "The minimum required must necessarily depend on the facts of each case and the general law applicable to criminal causes." *Olson*, 244 N.W.2d at 721 (quotation omitted).

██ Here, each of the three witnesses was questioned about "Defendant, Mr. William Ploof," "the Defendant in this particular case, Mr. Ploof," or "William Ploof, the Defendant in this particular case." On none of these occasions did defense counsel object based upon a lack of foundation under New Hampshire Rule of Evidence 602. Rule 602 specifically provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of

the matter." N.H. R. Ev. 602. Rule 602 does not, however, "require that the witness's knowledge be positive or rise to the level of absolute certainty." *State v. Harris*, 605 S.E.2d 809, 812 (W. Va. 2004) (discussing similar rule of evidence). The defendant could have challenged the factual foundation for the witnesses' testimony that the William Ploof that they were discussing was indeed the defendant, but he did not do so. We therefore conclude that the jury could properly have found that the witnesses had personal knowledge that the William Ploof about whom they testified was the defendant. *Cf. United States v. Polizzi*, 926 F.2d 1311, 1321-22 (2d Cir. 1991) (fact finder may draw an inference against defendant from his failing to question witnesses regarding disputed issues).

In *People v. Kern*, 149 N.W.2d 216, 217-18 (Mich. Ct. App. 1967), during juror *voir dire*, the trial judge pointed out the defendant to the venire, both by name and by his alias. On appeal, the defendant argued that the prosecution failed to identify him at trial as the perpetrator of the charged offenses. *Kern*, 149 N.W.2d at 218. While agreeing with the defendant that the trial court's conduct during *voir dire* did not excuse the prosecutor from proving identification at trial, it nevertheless concluded that testimony of the victim about "the defendant" and "Bill" was sufficient to identify the defendant as the perpetrator of the crimes. *Id.* Similarly, the jury here, who observed the defendant at jury selection, could infer that William Ploof and "the defendant" were interchangeably the subject of the testimony given by the witnesses.

■■ "It is not necessary that any one witness should distinctly swear that the defendant was the man, if the result of all the testimony, on comparison of all its details and particulars, should identify him as the offender." *Com. v. Cavanaugh*, 385 N.E.2d 1006, 1009 (Mass. App. Ct. 1979) (quotation omitted). Accordingly, we conclude that the repeated references to "Defendant, Mr. William Ploof," "the Defendant in this particular case, Mr. Ploof," and "William Ploof, the Defendant in this particular case," without objection, provided the "small amount of proof" necessary to identify the defendant as the perpetrator of the crimes charged. *Olson*, 244 N.W.2d at 721 (quotation omitted); *see also Preston v. State*, 287 N.E.2d 347, 348 (Ind. 1972) (concluding defendant sufficiently identified as person who committed offense when three witnesses referred to "defendant" as person who committed the crime).

The defendant next argues that the trial court erred by not declaring a mistrial during J.Z.'s testimony, because a comment unequivocally conveyed the defendant's prior criminal conduct to the jury. The State asserts that the issue was not preserved for appeal and, even if it were, J.Z.'s

statement did not improperly communicate to the jury that the defendant had been involved in other criminal activity.

During cross-examination focusing upon J.Z.'s delay in reporting the crimes, J.Z. testified that his father "was a drunk, an . . . abusive man, and I was scared of him knowing about it. . . . I feared my father's retribution . . . for the bad thing that I did by sneaking out of the house." J.Z. then stated to defense counsel, "Do you understand now?"; "What don't you understand?"; and, finally, "No. This guy is a multiple offender." Defense counsel immediately moved for a mistrial, asserting that he did not "know how you put this genie back in the bottle." He continued: "At a minimum, that needs to be stricken and the jury needs to know that they are to ignore it." The trial court denied the request for a mistrial, concluding that "in the context of the testimony as a whole, and the way that particular answer was worded — or statement was worded, I am going to find that the statement is not an irreparable injustice that can't be cured by an instruction." The trial court then instructed the jury, "Members of the jury, I'm striking the witness' last statement from the record, and instructing you to disregard it."

"A mistrial is appropriate only if the evidence or comment complained of was not merely improper, but also so prejudicial that it constituted an irreparable injustice that cannot be cured by jury instructions." *State v. Russo*, 164 N.H. 585, 589 (2013) (quotation omitted). "[I]ncurable prejudice may result when the testimony of a witness conveys to a jury the fact of a defendant's prior criminal offense." *Id.* (quotation omitted). Accordingly, we have held that a mistrial is appropriate when "a defendant's prior criminal conduct has been unambiguously conveyed to the jury." *Id.* at 589-90 (quotation omitted).

When reviewing a trial court's ruling on a motion for a mistrial, we "recognize that the trial court is in the best position to gauge the prejudicial nature of the conduct at issue and has broad discretion to decide whether a mistrial is appropriate." *Id.* at 589 (quotation omitted). "We will not overturn the trial court's decision on whether a mistrial or other remedial action is necessary absent an unsustainable exercise of discretion." *Id.* (quotation omitted).

The State asserts that because defense counsel "did not take any exception or object to the trial court's [denial of his motion for mistrial] or curative instruction . . . the defendant failed to properly preserve the issue of the denial of his motion for a mistrial for appeal." We disagree.

The purpose underlying our preservation rule is to afford the trial court an opportunity to correct any error it may have made before those issues are presented for appellate review. *State v. Town*, 163 N.H. 790, 792

(2012). Once the trial court concluded that a mistrial was not required, no further objection was necessary because the court was already aware of the substance of defense counsel's mistrial request.

 The defendant contends that "the unsolicited statement that 'this guy is a multiple offender' unambiguously conveyed [his] prior criminal conduct to the jury." The statement was made, however, while J.Z. was explaining his delay in reporting the crimes, which he ascribed to fear of retribution from his "abusive" father. Hence, the comment about "[t]his guy" being a "multiple offender" was not an unambiguous reference to the defendant. Under the circumstances, we conclude that J.Z.'s statement was not so prejudicial as to constitute an irreparable injustice. *See Russo*, 164 N.H. at 589. Moreover, the trial court's curative instruction eliminated any prejudice that might have been caused. The trial court immediately instructed the jury that it was striking J.Z.'s statement from the record and that the jury should disregard it. The jury is presumed to follow the trial court's curative instruction. *State v. Willey*, 163 N.H. 532, 539 (2012).

In sum, we conclude that a rational jury, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found the defendant guilty beyond a reasonable doubt, *see Wilmot*, 163 N.H. at 154, and that the trial court's denial of the motion for mistrial was not an unsustainable exercise of discretion, *see Russo*, 164 N.H. at 589. Accordingly, we affirm.

*Affirmed.*

HICKS, CONBOY, LYNN and BASSETT, JJ., concurred.